IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE CREIGHTON, | ) |
| Plaintiff, | ) Case No. 08 C 3241 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| POLLMANN NORTH AMERICA, Inc., | ) |
| Defendant. | ) |

## *MEMORANDUM OPINION AND ORDER*

Plaintiff Denise Creighton ("Creighton") filed suit against Defendant Pollmann North America, Inc. ("Pollmann") alleging: (1) disability discrimination in violation of the American with Disabilities Act ("ADA") (Count I); (2) retaliation and unlawful discharge in violation of the ADA (Count II); (3) intentional infliction of emotional distress ("IIED") (Count III); (4) retaliatory discharge under Illinois law for reporting safety concerns (Count IV); (5) retaliatory discharge under Illinois law for filing a worker's compensation claim (Count V); and (6) violation of the Illinois Whistleblower Act ('IWA") (Count VI). Pollmann moves to dismiss Counts III, IV and VI of the Complaint. For the reasons stated herein, Pollmann's Motion to Dismiss is denied in its entirety.

### *STATEMENT OF FACTS*

The following facts are taken from the allegations in Plaintiff's Complaint, which are accepted as true for purposes of deciding Defendant's Motion to Dismiss. Creighton was an employee of Pollmann from March 2005 through her termination on or about May 31, 2007. Compl. ¶ 9. She worked in the Business Development and Materials Management departments, and performed additional job functions outside of these departments. Compl. ¶ 10. Throughout her

employment with Pollmann, Creighton performed her job responsibilities in a manner that met or exceeded Pollmann's legitimate business expectations. Compl. ¶¶ 3, 47. Around September 9, 2006, Creighton was transferred to Pollmann's new work site. Compl. ¶ 17. Conditions at the new work site were toxic and exposed Creighton to harmful chemicals, odor from the new carpet and furniture, dust and debris. Compl. ¶ 18. Due to this exposure, Creighton experienced headaches and nausea, had trouble breathing, and began vomiting in the office bathroom. Compl. ¶ 19. On a daily basis, Creighton complained about the air conditions at the worksite to Mr. Roland Kuhtreiber, the Manager of Production and Development & Design. Compl. ¶ 20. On numerous occasions from September 9, 2006, through May 31, 2007, Creighton also complained to Pollmann's managerial and supervisory personnel, about her sick building syndrome, her potential chemical exposure, and violations of the regulations of the Occupational Safety and Health Administration ("OSHA"). Compl. ¶ 73. Despite these complaints, Pollmann took no action to remedy the situation. Compl. ¶ 20. Throughout September and October of 2006, construction, painting, sanding and electrical wiring continued. Compl. ¶ 21. Starting in November 2006, Creighton sought medical assistance for her ailments. Compl. ¶ 23. By December 2006, Creighton suffered from irritation of sinus passages, ringing of ears, pressure on eardrums and extreme migraines. Compl. ¶ 24. On March 23, 2007, after her attending physician told her that she needed more specialized medical care, Creighton sought assistance from the University of Illinois at Chicago ("UIC"). Compl. ¶ 25. To improve Creighton's treatment, the health care professionals at UIC made repeated requests to Pollmann, from March 23, 2007 through May 3, 2007, for its Material Safety Data Sheets ("MSDS"). Compl. ¶¶ 26, 74. Creighton also sought the MSDS from Pollmann by requesting them from Mr. Andreas Miloczki, the Human Resources ("HR") Manager. Compl. ¶ 26. Despite

these requests, Pollmann failed to provide the MSDS to Creighton or to the medical staff at UIC. Compl. ¶ 27. Additionally, although she tried, Creighton was unable to access the MSDS herself at Pollmann's facility. Compl. ¶ 28. On March 23, 2007, Creighton received a physician's note from UIC which stated, "no work at 950 Chicago Tube Drive, Romeoville, IL." Compl. ¶ 29. A copy of this doctor's note was also sent to Pollmann's HR department. Compl. ¶ 29. On March 26, 2007, Dr. McFarlene gave Creighton a doctor's note which stated, "Under doctor's care, will be able to return to work on 07/01/07." Compl. ¶ 30. A copy of this note was also sent to Pollmann's HR department. Compl. ¶ 30. On May 29, 2007, Mr. Miloczki, the HR Manager, arranged to meet with Creighton. Compl. ¶ 31. During this meeting she was informed by Mr. Miloczki that she would be terminated from her position at Pollmann. Compl. ¶ 32. Creighton was subsequently terminated around May 31, 2007. Creighton alleges that she was terminated because of her perceived impairment, and her complaints to Pollmann about their conduct. Compl. ¶ 32, 45. Creighton alleges that Pollmann had no reasonable or legitimate reason for terminating her. Compl. ¶ 58. Creighton further alleges that she was terminated in retaliation for her internal complaints about safety violations and OSHA violations, for notifying the health care professionals at UIC of her health concerns and providing them with information about Pollmann's work site that she thought violated state and/or federal laws, rules and regulations, and for filing a workers' compensation claim. Compl. ¶¶ 59, 66, 77.

When Creighton became sick, her physicians notified Pollmann that she could return to work with a reasonable restriction of a workplace free of exposure to respiratory sensitizers and respiratory irritants. Compl. ¶ 38. Creighton herself requested an opportunity to return to work on numerous occasions, and she sought to be transferred and/or accommodated. Pollmann refused to

3

accommodate her. Compl. ¶¶ 32, 39. During this same time period, other employees that worked for Pollmann were permitted to work part-time or from home during times of medically authorized illness; however, Creighton alleges that Pollmann required her to continue working in an unhealthy environment, and engaged in several other extreme and outrageous acts. Compl. ¶ ¶ 37, 52. Following this series of events, Creighton became depressed and was forced to see a mental health professional for her depression. Compl. ¶ 55. Creighton was also required to take medication for her depression. Compl. ¶ 55.

## *STANDARD*

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## *DISCUSSION*

Pollmann moves to dismiss Counts III, IV and VI of the Complaint. With respect to Count III, Pollmann asserts that the claim is preempted by the Illinois Human Rights Act ("IHRA") and the Illinois Workers Compensation Act ("IWCA") or, alternatively, that the Complaint fails to state

4

a claim for IIED. With respect to Count IV, Pollmann asserts that the claim is preempted by the IWA, and with respect to Count VI, Pollmann asserts that the Complaint fails to state a claim under the IWA.

**I.** *IIED Claim (Count III)*

A. *Preemption by IHRA*

Relying on the IHRA's exclusivity provision, Pollmann argues that Creighton's IIED claim is preempted by the Act. The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (citing 775 ILCS 5/8-111(c)("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.")). Under the IHRA, employers are prohibited from engaging in unlawful employment discrimination, including discrimination based on a perceived disability. 775 ILCS 5/2-102(A).

Pollmann claims that Creighton's common law claim for IIED is preempted by the IHRA because the claim is based on the exact same allegations as those that give rise to her disability discrimination claim and, therefore the IIED claim is "inextricably linked" to the discrimination claim. (Pollmann Mem. at 5.) The question of whether Creighton's IIED claim is preempted by the IHRA is not governed by whether the facts that support the IIED claim could also support a claim for disability discrimination. *Naeem*, 444 F.3d at 604; *see also Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). The question is whether Creighton can prove the elements of the IIED claim independent of legal duties furnished by the IHRA. *Naeem*, 444 F.3d at 604; *Maksimovic*, 687 N.E.2d at 22.

The Illinois Supreme Court has addressed the scope of IHRA preemption on two separate

5

occasions. First, in *Geise v. Phoenix Co. of Chicago, Inc.*, the Illinois Supreme Court held that the plaintiff's claims for negligent hiring and retention were preempted by the IHRA because they "depend[ed] on the prohibitions against sexual harassment for their viability" and, as such were "inextricably linked" to the concept of that particular civil rights violation. 639 N.E.2d 1273 (Ill. 1994). Subsequently, in *Maksimovic*, the Illinois Supreme Court clarified its previous holding in *Geise* when confronted with the question of whether the plaintiff's common law tort claims for assault, battery, and false imprisonment were "inextricably linked" to her sexual harassment claim. The *Maksimovic* court held that the common law claims were not "inextricably linked" with the claims of sexual harassment because the plaintiff could establish "the necessary elements of each tort independent of any legal duties created by the Act." 687 N.E. 2d at 22. Therefore, the IHRA does not preclude courts from exercising jurisdiction over IIED claims factually related to incidents of unlawful discrimination if the plaintiff can allege facts sufficient to establish the elements of IIED. *See e.g., Naeem*, 444 F.3d at 602-03 (citing *Maksimovic*, 687 N.E.2d at 23-24) ("We conclude that a common law tort claim is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary element of the tort independent of any legal duties created by the [IHRA]."); *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F.Supp.2d 1072, 1074-75 (N.D. Ill. 2002) (denying motion to dismiss IIED claim where the complaint indicated that plaintiff may be able to prove the elements of IIED without relying on any legal duties created by the IHRA); and *Bustamante v. Tin, Inc.*, 2008 WL 360786 , *1 (N.D. Ill. 2008) (denying motion to dismiss IIED claim where plaintiff's allegations could constitute IIED independently of civil rights claim).

In this case, as explained below, the Court finds that Creighton has alleged facts sufficient to state an independent claim for IIED. Accordingly, this Court finds that the allegations of

6

Pollmann's extreme and outrageous behavior as stated in Creighton's pleadings are not inextricably linked to Creighton's disability discrimination claims. Therefore, Creighton's IIED claim is not preempted by the IHRA.

B. *Failure to State a Claim*

Pollmann argues that Creighton's IIED claim should be dismissed because it fails to allege facts sufficient to establish the elements of a claim for IIED. (Pollmann Mem. at 7-9) To state a cause of action for IIED under Illinois law, a plaintiff must allege: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) that the defendant's conduct did in fact cause severe emotional distress. *P. Breneisen, Jr. v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2007) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). "To qualify as outrageous . . . conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id*. "Insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not qualify. *Id*. (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The circumstances surrounding a typical employment dispute usually do not rise to the level of extreme and outrageous conduct. *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). However, "cases in which [IIED] has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *McGrath*, 533 N.E.2d at 810.

In *Bustamante*, the court denied defendant's motion to dismiss plaintiff's IIED claim where the plaintiff alleged that he was discriminated against based on his race, was required to work under dangerous conditions, was unfairly disciplined in a humiliating manner, and was subjected to

7

degrading comments. 2008 WL 360786 at *1. The court found that these allegations, as stated in the complaint, supported an IIED claim, and therefore denied the defendant's motion to dismiss. *Id.* *3. Similarly, in *Naeem*, the court held that, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that the plaintiff stated a claim for IIED where she was forced to climb up an unstable stairway while pregnant, denied access to her computer, criticized during work meetings, given an increased work load, and forced to move offices.[1] 444 F.3d at 606.

Creighton's allegations suffice to state a claim for IIED in a notice pleading regime. All of Creighton's allegations of discrimination are incorporated into her IIED claim. She alleges that Pollmann forced her to work in a hazardous, unhealthy environment despite her repeated complaints, and that when the hazardous environment rendered her too sick to work Pollmann prevented her from working part-time or out of the office. Creighton alleges that she was basically given the choice between working in an environment that made her very sick or not working at all. Creighton alleges that Pollmann obstructed her medical treatment by refusing to respond to repeated requests by herself and her medical professionals for MSDS needed to improve her treatment, and by failing to supply her or her medical professionals with these MSDS.[2] Creighton alleges that after

---

[1]In support of his motion to dismiss, Pollmann relies on *McDowell v. J.B. Hunt Transport, Inc.*, 2004 WL 1878334 (N.D. Ill. 2004), claiming that the *McDowell* court dismissed an IIED claim "where plaintiff alleged he was forced to drive an unsafe vehicle; his complaints about the vehicle were ignored; and he was discriminated against based on race in his termination." (Pollmann Reply Mem. at 8). Pollmann has misrepresented the court's reasoning for dismissing the IIED claim. The court emphasized that, "[The] plaintiff has expressly argued that the sole basis for his IIED claim is [d]efendant's alleged defamatory statement to a subsequent employer. . . ." McDowell, 2004 WL 1878334 at *6. The court found that this allegation of defamation alone did not rise to the level of extreme and outrageous and dismissed the IIED claim. *Id*.

[2]Although some of these allegations are not expressly included in Count III, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Marx v. Northwestern Memorial Hosp.*, 2007 WL 1280643, *8 (N.D. Ill. 2007) (citing *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992)).

8

Pollmann's toxic worksite conditions made her sick, Pollmann terminated her for her perceived disability. Creighton further alleges Pollmann intended to cause her severe emotional distress, Pollmann's acts were perpetrated with such recklessness as to cause her severe emotional distress, she did experience extreme emotional distress in that she became depressed, she was forced to see a mental health professional and take medication for her depression, and Pollmann's acts, actions and inaction directly and proximately caused her severe emotional distress.

In this case, viewing the evidence in the light most favorable to Creighton, this Court finds that the conduct that Creighton has alleged in support of her IIED claim is sufficient to withstand a motion to dismiss.

C. *Preemption by the IWCA*

Pollmann next asserts that Creighton's IIED claim is barred by the IWCA. The exclusivity provision of the IWCA bars employees from bringing claims against employers for accidental injuries. *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1016 (7th Cir. 1997) (citing 820 ILCS 305/1 *et seq*.). There are four exceptions to this rule: (1) when the injury was not accidental; (2) when the injury did not arise from employment; (3) when the injury was not received during the course of employment; and (4) when the injury is not compensable under the act. *Hunt-Galliday*, 10 F.3d at 1016 (citing *Meerbrey v. Marshall Field and Co*., 564 N.E.2d 1222, 1226 (Ill. 1990)). An injury intentionally inflicted on an employee by another employee is considered accidental on behalf of the employer if it was unexpected and unforeseen b the injured party. *Id*. However, the IWCA allows a cause of action against an employer in these circumstances "for injuries that the employer or its alter ego intentionally inflict[ed] upon an employee or which were commanded or expressly authorized by the employer." *Id*. at 1016-17. An individual need not be

9

"at the top of the corporate pyramid" to qualify as an alter ego. *Alberts v. Wickes Lumber Co.*, 1995 WL 476654, at *4 (N.D. Ill. 1995). Although supervisory status alone is insufficient to establish an employee as an alter ego, an employee qualifies as an alter ego if he has sufficient decisional and policy-making authority that he can speak for the company. *Arnold v. Janssen Pharmaceutical, Inc.*, 215 F.Supp.2d 951, 957 (N.D. Ill. 2002).

Creighton's claim for IIED is not preempted by the IWCA. In her Complaint, Creighton alleges that she complained of the hazardous and unsafe working conditions to managerial and supervisory personnel. She also alleges that she complained on a daily basis to Mr. Roland Kuhtreiber, the Manager of Production and Development & Design, and that no action was taken to remedy the harmful situation. Creighton further alleges that her medical care was obstructed when Mr. Andreas Miloczki, the HR Manager, did not provide the MSDS to her or her doctors, despite repeated requests. Finally, Creighton alleges that it was Mr. Miloczki, the same HR Manager that obstructed her medical care, that fired her from her job at Pollmann.

Mr. Miloczki, is a HR Manager and appears to have hiring and firing authority, as he was the individual that Creighton alleges fired her. Mr. Kuhtreiber, is the Manager of Production and Development & Design, and appears to be one of Creighton's supervisors. Both Mr. Miloczki and Mr. Kuhtreiber qualify, at least at the motion to dismiss stage, as potential alter egos of Pollmann. *See, e.g.*, *Buddingh v. South Chicago Cable, Inc.*, 830 F.Supp. 437, 443 (N.D. Ill. 1993), *abrogated on other grounds by Adams v. City of Chicago*, 865 F.Supp 445 (N.D. Ill. 1994) (allegation that individuals were managerial employees was sufficient to allege they were alter egos of corporation); *Graves v. Man Group USA, Inc.*, 479 F.Supp.2d 850, 854 (N.D. Ill. 2007) (allegation that individuals were supervisors and one a human resources representative was sufficient to allege they were alter

egos of corporation); *Watkins v. Woodlawn Cmty. Dev. Corp.*, 2006 WL 218163, at *3 (N.D. Ill. 2006) (allegation that individual was property manager and plaintiff's supervisor was sufficient to allege he was alter ego of corporation); and *Alberts*, 1995 WL 476654 at *5 (allegation that individual was zone manager with authority over plaintiff was sufficient to allege he was alter ego of corporation). Accordingly, this Court finds that Creighton's IIED claim is not preempted by the IWCA.[3] For the reasons stated above, Pollmann's Motion to Dismiss Count III is denied.

## 2. *Illinois Common Law Retaliatory Discharge Claim (Count IV)*

Pollmann argues that common law retaliatory discharge claims for reporting safety concerns are preempted by the IWA, and that Creighton therefore has no common law cause of action. The IWA prohibits retaliation by an employer against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 ILCS 174/15. Whether the IWA codified and thereby preempted the common law tort of retaliatory discharge has not yet been resolved by the Illinois Supreme Court. Federal district courts have held that the IWA codifies, and therefore preempts, any common law retaliatory discharge claim based on whistle-blowing activities, and that a plaintiff who makes complaints within the company rather than to a government or law enforcement agency is not protected by the IWA and has no common law claim for relief. *See e.g., Jones v. Dew*, 2006 WL 3718053 at ** 3-4 (N.D. Ill. 2006); *Bustamante*, 2008

---

[3]Pollmann also moves to strike all of Creighton's claims for damages arising out of the alleged chemical exposure in the workplace, claiming they are preempted by the IWCA (Pollmann Mem. at 9-10). In response, Creighton represents that she is not seeking relief for her workplace injuries but, is seeking relief for emotional distress, including its physical manifestations, that resulted from violations of the ADA, the IWA, IIED, and retaliatory discharge. (Creighton Resp. Mem. at 6). Creighton further represents that reference in the complaint to her physical injuries that resulted from the chemical exposure are alleged only to give context to her claims. *Id*. Therefore, Pollmann's motion to strike is denied as moot.

11

WL 360786 at *4; *Riedlinger v. Hudson Respiratory Care, Inc*., 478 F.Supp.2d 1051 (N.D. Ill. 2007); and *Robinson v. Morgan Stanley*, 2007 WL 2815839 (N.D. Ill. 2007).

In contrast, in *Callahan v. Edgewater Care & Rehabilitation Center, Inc*., 872 N.E.2d 551 (Ill.App. 2007), the Illinois Appellate Court held that the enactment of the IWA did not preempt or repeal the common law right of action in favor of an employee discharged in retaliation for reporting illegal activities to her superior or someone other than a government or law enforcement official. The court reasoned that it could not see "how the [IWA] creates any irreconcilable conflict with the persistence of a common-law remedy in favor of employees not covered by the statute but who, nevertheless, are discharged in retaliation for whistleblowing activities in violation of a clearly mandated public policy." *Id*. at 554.[4] Because retaliatory discharge is an Illinois state law claim, Illinois substantive law controls. *Erie R. Co*., *v. Tompkins*, 304 U.S. 64 (1938).

Creighton's claim for retaliatory discharge does not fall within the ambit of the IWA. In support of her claim, Creighton alleges that Pollmann terminated her in retaliation for her "internal complaints" about safety concerns and OSHA violations. Creighton does not allege that she was terminated for disclosing this information to a government or law enforcement agency.[5] Because the *Callahan* court specifically held that the IWA does not preempt or repeal a common law claim for retaliatory discharge for an employee wrongfully terminated for reporting illegal activity to someone other than a government or law enforcement agency, Creighton's common law claim for retaliatory discharge is not preempted by the IWA. Therefore, Pollmann's Motion to Dismiss Count

---

[4] The *Callahan* court did state that it can reasonably be argued that the IWA codified the common law actions for employees discharged for reporting illegal activities to a government or law enforcement agency. 872 N.E.2d at 554.

[5] Creighton does allege a violation of the IWA in Count VI of her Complaint. There, she does allege that Pollmann terminated her for disclosing safety concerns and violations to a government or law enforcement agency.

IV is denied.

**3. *Violation of IWA (Count VI)***

Pollmann asserts that Creighton's Complaint fails to state a claim for a violation of the IWA because she does not allege that she made any reports, disclosures or complaints to a government or law enforcement agency. As stated above, the IWA prohibits retaliation by an employer against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 ILCS 174/15. State universities are government agencies. *See Miraki v. Chicago State University*, 259 F.Supp.2d 727, 731-32 (N.D. Ill. 2003) (Chicago State University is a government agency); *Saniat v. City of Chicago*, 1997 WL 45304 at *2 (N.D. Ill. 1997) (University of Illinois is an agency of state government); *Erickson v. Northeastern Ill. Univ.*, 207 F.3d 945, 947 (7th Cir. 2000) (acknowledging NEIU's status as a government agency).

In her Complaint, Creighton alleges that she notified UIC, through its health care professionals, of her health concerns stemming from the hazardous conditions at her workplace. Creighton further alleges that Pollmann retaliated against her for disclosing to UIC staff, information that she had reasonable cause to believe violated state and/or federal laws, rules and/or regulations. Creighton does allege that she made disclosures to a government agency, and therefore Pollmann's motion to dismiss Count VI is denied.[6]

---

[6] Creighton attached a personal affidavit to her response to Pollmann's motion to dismiss. This Court will not consider her affidavit in ruling on Pollmann's motion. *See* Fed.R.Civ.P. 12(b).

## *CONCLUSION AND ORDER*

For the reasons stated herein, Pollmann's Motion to Dismiss Counts III, IV, and VI is denied in its entirety.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: 12/18/08